103 F.3d 138
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re KAHLENBERG LUMBER COMPANY, INC., dba Aetna Lumber
Company, Debtor.
HMT INVESTMENT CORPORATION, Plaintiff-Appellant,
v.
Arnold L. KUPETZ, Defendant,
and
Sulmeyer, Kupetz, Baumann & Rothman; Howard Ehrenberg;
Wesley Avery, Defendants-Appellees.
 No. 95-55645.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 7, 1996.
Decided Nov. 20, 1996.
 
 1
 Before: GOODWIN, WIGGINS and NOONAN, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 INTRODUCTION
 
 3
 In February, 1993, HMT Investment Corporation (HMT), plaintiff-appellant, filed suit in state court against Sulmeyer, Kupetz, Baumann & Rothman (the Firm), Howard Ehrenberg, and Wesley Avery, defendants-appellees, alleging malpractice, negligence, and breach of contract. Appellees removed the action to the bankruptcy court that had presided over the Chapter 7 action from which HMT's claims arose. HMT moved the court to abstain and remand, arguing that the claim was not a core proceeding and that remand was required. Appellees moved for summary judgment. The bankruptcy court granted appellees' motion for summary judgment and denied the motion to abstain and remand as moot. The district court affirmed. We have jurisdiction pursuant to 28 U.S.C. § 158(d) and reverse.
 
 FACTS
 
 4
 In April, 1990, Aetna Lumber Co., Inc. sold its assets to Kahlenberg Lumber Co. (Kahlenberg) and changed its name to HMT. As part of the purchase price, Kahlenberg gave HMT a $450,000 note secured by assets of the business. HMT perfected the security interest. In October, 1991, Kahlenberg's creditors filed for involuntary bankruptcy under Chapter 7. The bankruptcy court appointed Arnold L. Kupetz as trustee. Kupetz employed the Firm as his bankruptcy counsel.
 
 
 5
 Kupetz sought bankruptcy court authority to sell some of Kahlenberg's inventory due to its limited shelf life. Kupetz obtained a "consensual surcharge arrangement" from HMT in which HMT stated that it did not object to payment of Kupetz's expenses of sale being surcharged against its collateral. The lienor senior to HMT was paid in full after the inventory sale and $75,000 was put aside for potential liquidation claims.
 
 
 6
 Cascade Empire Corporation (Cascade), one of Kahlenberg's suppliers, filed a Motion for Reclamation requesting $16,364.30 out of the $75,000 that the court had put aside. Kupetz opposed Cascade's motion based on HMT's senior secured interest. During the litigation of Cascade's motion, Cascade's lawyer produced conflicting Statements of Domestic Stock Corporation for HMT. The first, filed in May, 1991, correctly listed Harry and Marsha Tash as officers. The second, filed in September, 1991, incorrectly listed Ed Kahlenberg as the sole officer. Defendant Avery, an attorney at the Firm, represented to the bankruptcy court that HMT had no knowledge of either statement and that Harry Tash was a principal in Kahlenberg before the sale. HMT alleges both statements were untrue and damaging to it. The bankruptcy court found that HMT had not acquired its security interest in good faith and issued a bad faith order. The Firm filed a motion for reconsideration which was denied. The Firm then filed a notice of appeal but abandoned it.
 
 
 7
 Other creditors brought reclamation claims following the issuance of the bad faith order to determine relative priorities in the remainder of the $75,000 set aside from the inventory sale. The creditors relied on the bad faith order. HMT opposed the claims, arguing that it was entitled to an adversary proceeding to determine the validity and priority of its security interest. The bankruptcy court disagreed and granted the creditors' motion. The Bankruptcy Appellate Panel (BAP) reversed and remanded for an adversary hearing.
 
 
 8
 While the appeal was pending before the BAP, the creditors filed a complaint against HMT to avoid its lien as a fraudulent conveyance. The creditors brought a motion for summary judgment which was granted and so mooted the reclamation claims. HMT appealed the grant of summary judgment. The BAP reversed and remanded because it found the bankruptcy court erroneously relied on the proceedings that it earlier reversed and that HMT was entitled to have the finding of bad faith established by an adversarial proceeding. On remand, the bankruptcy court found that HMT's security interest was not created in bad faith and dismissed the petition of the unsecured creditors. We grant appellees' request for judicial notice of this later judgment of the bankruptcy court. In re Kahlenberg Lumber Co., Inc. (Kahlenberg Lumber Co. v. HMT Investment Corp.), Case No. LA 91-93701-CA, Adv. No. LA 93-02663-CA (Bankr.C.D.Cal. Aug. 28, 1996).
 
 ANALYSIS
 
 9
 I. THE BANKRUPTCY COURT DID NOT ERR IS NOT ABSTAINING FROM HEARING THE MALPRACTICE ACTION BECAUSE IT WAS A CORE PROCEEDING
 
 
 10
 The bankruptcy court's acceptance of jurisdiction on a removed case is reviewed de novo, while its factual determinations are reviewed for clear error. In re Harris Pine Mills (Maitland v. Mitchell), 44 F.3d 1431, 1434 (9th Cir.), cert. denied, 115 S.Ct. 2555 (1995). The district court held that the entire action was a core proceeding. HMT concedes on appeal that the negligence and breach of contract claims are core under Harris Pine Mills, but argues that the malpractice claim is noncore.
 
 
 11
 We recently defined core proceedings to include administrative matters that arise only in bankruptcy and would have no existence outside of the bankruptcy. Harris Pine Mills, 44 F.3d at 1435. We held that "postpetition state law claims asserted by or against a trustee in bankruptcy or the trustee's agents for conduct arising out of the sale of property belonging to the bankruptcy estate qualify as core proceedings." Id. at 1437. We find no meaningful distinction between the status of the negligence and breach of contract claims that HMT concedes are core and the malpractice claim that HMT argues is noncore. Like the negligence and breach of contract claims, HMT's malpractice claim arose from the Firm's actions in settling the claims of the bankruptcy estate and representing HMT's interests before the bankruptcy court. Those actions are core under Harris Pine Mills. The district court did not err in affirming the bankruptcy court's refusal to abstain.
 
 
 12
 II. THE BANKRUPTCY COURT DID NOT ERR IN HEARING THE FIRM'S SUMMARY JUDGMENT MOTION
 
 
 13
 HMT argues that the bankruptcy court erred in adjudicating the summary judgment motion because the underlying action stemmed from the bad faith order the court issued in the bankruptcy proceedings. HMT cites Federal Rule of Evidence 605, which prohibits a judge presiding at trial from testifying in that trial. The bankruptcy court did not err in ruling on summary judgment here because the judge did not act as a material witness. Although the judge may have used his familiarity with the case to help him rule on the motion, that use does not implicate the concerns behind Rule 605, which pertain to the effect of judicial testimony on a jury or the judge's impartiality. Fed.R.Evid. 605, advisory committee notes.
 
 
 14
 III. THE BANKRUPTCY COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR DEFENDANTS-APPELLEES BECAUSE THERE WAS A MATERIAL ISSUE OF FACT REGARDING WHETHER AN ATTORNEY-CLIENT RELATIONSHIP WAS CREATED BETWEEN HMT AND THE FIRM
 
 
 15
 We review a grant of summary judgment de novo, "examin[ing] the evidence in the light most favorable to the nonmoving party to determine whether any genuine issues of material fact exist and whether the lower court correctly applied the relevant law." Harris Pine Mills, 44 F.3d at 1438. Credibility determinations and the weighing of conflicting evidence are left to the trier of fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "if the factual context makes the nonmoving party's claim implausible, then that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Bator v. Hawaii, 39 F.3d 1021, 1026 (9th Cir.1994) (quotation omitted).
 
 
 16
 HMT argues that a material issue of facts exists regarding whether an attorney-client relationship was formed. It relies primarily on two declarations filed in opposition to the Firm's motion for summary judgment, one by Harry Tash and the other by HMT's corporate attorney Byron Beck. Appellees admit the sworn statements but explain them as contacts between attorneys for Kupetz and a purported secured creditor who happened to have a coincidence of interest rather than as creating an attorney-client relationship. They rely on evidence created at the time of the events and affidavits by Ehrenberg, Avery, Susan Moley, an attorney with the Firm, and Maurice Wainer, attorney for other unsecured creditors.
 
 
 17
 The sworn statements are not inherently incredible. Tash's declaration states that Firm attorneys told him the Firm represented HMT in both the reclamation hearing and collection matters. In a declaration Moley prepared for Tash to sign at the time the Firm became involved in collection matters, Tash acknowledged that the Firm was being hired by Kupetz to collect accounts receivable. This admission does not refute Tash's statement that Moley told him the Firm represented HMT on other matters. Beck's declaration states that Firm attorneys told him the Firm would represent HMT in connection with the reclamation claim. Taking the sworn statements as true, as we must do unless the factual context makes them implausible, there is a material issue of fact about whether the Firm represented Tash in the reclamation hearing even though appellees cite evidence to the effect that they believed they were not HMT's attorney. The fact that the Firm charged the estate rather than HMT is a factor but is not dispositive. That Beck was one of HMT's attorneys does not preclude appellees from also acting as HMT's attorney. The district court erred in upholding summary judgment for appellees because the malpractice, negligence, and breach of contract actions all relate to the alleged attorney-client relationship and HMT submitted evidence of a material issue of fact on this issue. There is a factual dispute that could not be resolved by summary judgment.
 
 
 18
 Appellees argue there is no causation because the result in the bad faith order was repeated in the motion for reconsideration and twice more in the two cases by the remaining reclamation creditors, even with HMT's additional evidence. They argue HMT's damages result from the bad faith order rather than any breach by them. We disagree. With respect to the two reclamation cases, the BAP found that the bankruptcy court relied on the first bad faith order rather than performing an independent assessment of the evidence. Although HMT eventually had an adversary hearing on the validity of its security interest, it had to defend two other cases through the BAP to get that right. HMT prevailed in the adversary hearing; the bankruptcy court found that HMT's security interest was not created in bad faith. There is a sufficiently material issue of fact regarding causation because the sequence of events raises the question of whether, but for appellees' negligence, HMT would have prevailed initially on the reclamation claim brought by Cascade.
 
 CONCLUSION
 
 19
 For the reasons stated, the judgment of the district court is REVERSED and the case is REMANDED to the bankruptcy court.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3